### JAMES H. TICHENOR v. JAMES W. HEWSON.

After the expiration of the commission of a justice of the peace, he can neither accept an appeal bond, certify a transcript, nor do any official act whatever ; and this court will not issue a mandamus, commanding the Court of Common Pleas to re-instate an appeal allowed by a justice, whose commission had expired.

·In granting or refusing to grant an appeal, the justice acts judicially, and is to adjudge, or at least to decide, 1. Whether it is a case in which an appeal lies. 2. Whether the application is made in due time. 3. Whether the bond is in due and legal form, in the matter of penalty, and in the terms of its condition. 4. Whether the surety named in the bond is a freeholder in the county, and otherwise sufficient. 5. Whether the bond has been executed in due form of law, so as to be a valid and effectual security to the opposite party. And it is only when he is satisfied of these matters, that he is to grant an appeal.

This was an action brought in the court for the trial of small causes, tried before a jury and a verdict and judgment rendered in favor of the plaintiff. Before the next stated term of the Court of Common Pleas, the commission of the justice, before whom the cause was tried, expired. After the commission had expired, and before the said stated term of the Court of Common Pleas, the defendant tendered an appeal bond to the justice, and demanded an appeal. The papers, appeal bond and transcript of the justice's docket, certified, signed and sealed by him, as late justice of the peace, were duly sent up to the Court of Common Pleas. When the appeal was called on for hearing, the Court of Common Pleas dismissed the same, and now an application is made to this court, for a writ of mandamus to re-instate the appeal.

*W. Pennington* in favor of the application.

*Dodd* contra.

HORNBLOWER, C. J.   This cause was tried before Stephen Dod, esq. a justice of the peace, and a verdict and judgment rendered for the plaintiff, after the trial and judgment, and before the then next ensuing term of the common pleas of Essex county, the justice's commission expired, and was not renewed. After the justice was out of commission and before the first day of the then ensuing Court of Common Pleas, the defendant tendered to the said Stephen Dod, an appeal bond, and demanded an appeal.   This appeal the said Stephen Dod granted, and sent up the papers to the Court of Common Pleas, under his hand and seal, as *late* justice of the peace.   The Court of Common Pleas, when the cause was called on for trial, on motion, dismissed the appeal, and we are now applied to for a *mandamus* to that court, to restore , or re-instate the appeal.   Before we can grant this motion, we must be satisfied, that an appeal was regularly pending before the Court of Common Pleas, and that it was unduly dismissed.   By the act constituting courts for the trial of small causes, and the supplements thereto, an appeal is given in certain cases only ; but it is to be granted *by the justice* upon certain conditions, and by the thirty-ninth section, *Rev. Laws,* 640, it is expressly enacted " that *the justice who grants* the appeal, shall send a transcript of the proceedings and judgment, *under his hand and seal, &c.*"

And by the forty-first section, *the justice* is directed, among other things, to enter upon his docket, " the appeal " and " when and by whom demanded, and all the proceedings before him had, &c."

In granting, or refusing to grant an appeal, the justice acts *judicially.*   One of the conditions upon which it is to be *granted,* is, that the party applying for it, is to enter into a bond to the other party, with at least one *sufficient* surety, being a freeholder, which bond is to be in a certain penalty, " conditioned " for the performance of certain matters prescribed in the act, see thirty sixth section.

The justice then is *judicially,* or if only as a clerk or ministerial officer, yet under the influence and sanction of his oath of

office, when he is applied to for an appeal, to *adjudge*, or at least to decide, 1. Whether it is a case in which an appeal lies. 2dly, Whether the application is made in due time. 3dly, Whether the bond is in due and legal form, in the matter of penalty and in the terms of its condition. 4th, Whether the surety named in the bond is a freeholder in the county and otherwise sufficient; and 5thly, Whether the bond has been executed in due form of law, so as to be a valid and effectual security to the opposite party. And it is only when he is satisfied of these matters that he is to grant an appeal. Again, when granted, he is, as the clerk of his own court, *to enter* upon *his record*, the appeal, and when and by whom demanded; and *he, the justice,* is to certify the transcript, under *his* hand and seal, to the Court of Common Pleas. In all these proceedings, the law contemplates the justice as acting *officially*, under the oath of office, and responsible, for any violation of official duty or integrity. How then, I would ask, can a man, *not a justice of the peace, without any judicial* or ministerial *authority*, not acting under any oath of office; *unimpeachable* for any fraud or malpractice, in the transaction; how, or with what legal propriety, and I may add, with what security to parties, can he be called upon *to grant an appeal, to judge of the party's right to have one, to decide upon the legal sufficiency and character of the bond or security offered; to certify under his hand and seal, to the Court of Common Pleas, and to meddle with and make* entries upon the docket, which is eventually to be a public record? *Rev. Laws,* 641, *sec.* 42.

But it may be said, that the act of assembly gives the party an appeal, and he ought not therefore to be deprived of it. True, the act gives an appeal; but gives it in just such cases, upon such conditions, and upon such contingencies as the legislature have prescribed and provided. It is equally true, that the act gives the successful party, the right to an execution upon his judgment. Why not then permit the justice after he is out of office to issue the execution? It is no answer to say, the party may have a new action on the judgment; before he can get execution in that way, the debtor and his effects may be beyond his reach. If there is a failure of justice, the legislature are responsible for it, and not this court. The appeal

and all its incidents, are created by the statute, and the Court of Common Pleas have no jurisdiction in the matter, beyond what the statute gives them. If, therefore, the legislature have not prescribed any mode by which a party can get up an appeal, after the justice goes out of office, by death, resignation, impeachment or otherwise, they either intended, he should have none, or what is more probable, have unintentionally omitted to provide for the case, and they can easily and alone remedy the evil.

In *Bennet* v. *Kite*, 4 *Halst.* 106, this court refused a mandamus, on the ground that a certificate on the back of the transcript, signed by the justice, certifying when and by whom an appeal had been demanded and that he accepted the bond and granted the appeal, " was no part *of the transcript and proceedings entered according to the statute on his docket, and which he was bound to make and certify under his hand and seal.*" And shall we now command the Court of Common Pleas to receive and entertain jurisdiction of an appeal in the absence of any certificate at all by the justice?

In the case of *Ball* v. *Van Houten*, 1 *South.* 32, this court held that a justice having gone out of office, could make no return to a certiorari; nor could the clerk of the county do so, while the justice was living, but the court in that case prescribed the manner in which the plaintiff in certiorari should bring up a copy of the record.

I will not say that the Courts of Common Pleas may not by a rule of court prescribe the mode of getting an appeal before them, where the justice is out of office; it will be time enough to decide upon that matter when the question comes before this court; I will say, however that it strikes me now as a proceeding, that would look very much like legislating appeals into existence, where otherwise there could be none. There is no analogy between such a proceeding by the Court of Common Pleas and the proceedings of this court in the case of a certiorari. The common pleas have no jurisdiction in matters of appeal, but what they derive from the statute, and all the decisions from 1 *Halst.* 230, to this day, have gone upon the ground of requiring a strict compliance with the provisions of the act, 3 *Hal t.* 2 .. 6 *Halst.* 339, 4 *Halst.* 290, 7 *Halst.* 82.

Tichenor *v.* Hewson.

But this court possesses a general superintending control over inferior jurisdictions and may not only send its writ of certiorari to magistrates and others, but may direct what shall be returned therewith and the manner in which such return shall be made.          . .  .

Admitting however that the Court of Common Pleas may by rule of court obviate this difficulty, yet we can make no such rule for them; nor can we command or compel them to make any.   Why then should this court command them to re-instate the appeal?  what shall they do with it ?  Go on and try the cause upon  an unattested, unauthenticated paper ?    Or shall they now make a rule in the nature of an *ex post facto* regulation to legalise the proceeding ?

If it was in the power of the Court of Common Pleas to relieve the party, it ought to have been done, on the motion and at the instance of the appellant on the first day of the term to which the appeal should have been brought.   But the applicant did nothing, he stood still and reposed himself upon the unofficial certificate and the unauthorised acts of a man, not a justice; till the *appeal* was called on for trial.   There was no appeal before the court—It was a non-entity and the court could render no judgment upon it, they could only dismiss the proceedings.

I am not unmindful of the maxim, " *Boni judicis est ampliare jurisdictionem.*" (It is the duty of every court to extend the arm of justice further than usual, when otherwise there would be a failure of justice, *Prac. in Chan.* 329.)   But *non constat*, that there will be a failure of justice—the legal presumption is otherwise ; and we must not forget another and a sound maxim of our law, " *Actus legitimi non recipiunt modum* "—(authorities given by law must be executed in the mode prescribed by law and admit of no qualification, 17 *Vin. abr.* 354.)   My opinion therefore is that the mandamus must be refused.

DRAKE, J. concurred.

FORD, J.  James H. Tichenor appealed from a judgment rendered in the court for the trial of small causes, before Stephen Dod, esq. and his appeal was dismissed in the common pleas, because the commission of the justice had expired, after the rendition of the judgment, before the time for demanding an appeal had

Tichenor *v.* Hewson.

elapsed, the court being of opinion, that after the expiration of his commission, he could neither accept a bond, certify a transcript, nor do any official act whatever. The plaintiff thereupon applied to this court for a mandamus to reinstate the appeal, and I am of opinion it ought to be granted.

The 36th section of the statute, *Rev. Laws*, 640, contains a positive enactment, " that from any judgment which may be obtained before a justice of the peace, either party may appeal to the Court of Common Pleas." This statutory right of appeal cannot be judicially barred unless some clause in the statute as imperatively takes it away. One clause should never be made to repeal another by construction, if they can both be supported by any reasonable interpretation. Now the right of appeal is said, in this case, to be entirely incompatible with the 36th and 39th sections, which require that the "*justice*" shall grant the appeal, and send up a transcript of the proceedings, under his hand and seal; and it is argued, that on his ceasing to be a "*justice*" he lost all legal competency to perform these official acts. This reasoning supposes we are bound to give the word " justice " none other than its technical meaning; but every part of the context of the statute, as well as common parlance, intends by the word "*justice*" the *person* who tried the cause and rendered the judgment, and who has the legal custody of the record. Now when a word is susceptible of two meanings, that which will produce harmony among the different clauses of a statute, and allow to each one its just and plain operation, is always to be preferred to that which will put the clauses in mutual conflict and make one destructive of the other. In ordinary cases, where the word " justice " can be understood technically, without disturbing any part or parts of the statute it ought to be so understood; but in cases like the present, where the controversy between the parties is not concluded, but still depending in a course of appeal, the word " justice " may be understood to mean the *person* who issued the summons and venire, tried the dispute and gave judgment, and holds the record in his legal custody. It is not only susceptible of this meaning fairly, but it must be so understood in this case, or the intent of the legislature will be doubly frustrated; first, by the loss of an appeal which they have expressly granted, and secondly by ren-

dering a judgment absolute and conclusive when the commission is suffered to expire, when it would not have been conclusive if the commission had been renewed; an absurdity of intent that ought never to be imputed to the legislature.

It is not unusual for the same word in a statute to be construed *technically* as to some of its regulations, and *not so*, as to others, especially where it concerns business depending, unfinished, and progressing under a statute. By the 9th section of the act, *Rev. Laws* 432, the "sheriff" who levies on lands shall sell them to the highest bidder; by the 12th section he shall make a deed to the purchaser. The word "sheriff" technically means an officer who acts within a county under a commission for a limited time. It may just as well be argued that he loses all legal competency to perform an official act after his commission expires, because he is no longer "sheriff" as to argue so in the case of a "justice"; and yet he may go on to sell the land after his commission is out, and make a good deed for it under his hand and seal. Though the word used by the statute is "sheriff" and he is no longer technically such, the law will understand it to mean the *person* who levied the execution, and it has made therefore a fixed rule, for the sake of completing unfinished business, that the person who begins execution as sheriff shall complete it. If the law can place this construction on the word "sheriff" to enable him to sell freehold estates and execute deeds under his hand and seal, it may by analogous construction of the word "justice," receive from him the simple copy of a record in his custody, wherein the proceedings were begun and carried on by himself, especially where it is necessary to give effect to a statute, the plain intent of which cannot otherwise be executed. So far the analogy may be insisted on as is necessary to effectuate the intent of the statute, in a matter that relates merely to form and not at all to the merits or justice of the case. A transcript and return of the appeal bond and papers by the *person* who tried the cause, and has the legal custody of the record, might be holden *prima fa-.cie* sufficient, subject to correction of errors therein, which the adverse party might be able to substantiate, according to the rules for perfecting records or transcripts in other cases. No inconvenience can arise to any body from this construction of

the word "justice," and in principle it is in analogy with the acts and representations made by sheriffs and constables, and received from referees, arbitrators and commissioners, after their offices have been fulfilled, and they have become technically *functus officio ;* while the rejection of it is attended with the most evil consequences, rendering one of the clauses in a public statute inoperative, taking away a statutory right of appeal, and denying to suitors the privileges of common justice. I am of opinion that the plaintiff's appeal ought to have been allowed in virtue of the documents that were filed, and that it ought to be re-instated in the Court of Common Pleas.

Mandamus refused.

CITED in *Chadwick* v. *Reeder,* 4 *Harr.* 158; *Rodenbury* v. *Rosebury,* 4 *Zab.* 492; *Township of Morris* v. *Carey,* 3 *Dutch.* 401.